UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID MAY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:19-CV-329 RLM |
| ) | |
| ANDREW SAUL, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

David May seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons stated in open court at the hearing on June 3, 2020 and summarized below, the court reverses the Commissioner's decision and remands for further proceedings.

David May applied for DIB alleging disability as of September 1, 2010 due to ulcerative colitis and pancreatitis. He was 30 years old in September 2010, obtained an associates degree in 2011, and has worked as a respiratory therapist since 2011. He worked full time in 2012, but reduced his hours to four hours a week in 2013 and became a stay-at-home dad. His application was denied initially, upon reconsideration, and after a December 2017 administrative hearing.

After reviewing the medical evidence and hearing testimony from Mr. May

and a vocational expert (Sharon Ringenberg), the ALJ found that:

- Mr. May had engaged in substantial gainful employment from January-December 2012.

- Mr. May had a medically determinable impairment – ulcerative colitis in remission – but his "impairment or combination of impairments" wasn't severe during the periods he wasn't engaged in substantial gainful activity (September 1, 2010 to December 2011 and January 2013 to July 2, 2018).

- "An August 2012 visit note [by Dr. Michael Chiorean, a treating specialist] described the claimant in clinical remission since his diagnosis almost three years prior"; Mr. May's condition was managed with a combination of medications; and immunosuppressive therapy had been recommended, but Mr. May had declined.

- Dr. Monika Fischer (Mr. May's treating gastroenterologist since November 2012) noted in August 2014, that he hadn't been seen in almost two years, that his ulcerative colitis was clinically in remission and was well-controlled with medication management as long as he was compliant. Dr. Fischer similar findings in October 2015 and August 2016.

- Consulting and examining physician Dr. R. Gupta and the state agency consulting physicians and psychologists opined that Mr. May's impairments were not severe and/or didn't limit his ability to do work-related activities, and those opinions were entitled to "great" and/or "significant" weight.

- In November 2013, Dr. James Mulray (Mr. May's family physician) noted

2

that Mr. May "may not be able to return to return to work without re exacerabation" and in July 2016 he opined that Mr. May was "permanently and totally disabled," but his opinions were conclusory and unsupported by the record.

• Dr. Jason Moshier opined in October 2017 that Mr. May was "disabled" and "has not been able to [work full-time] due to his condition flaring up too much", "would be off task greater than 20 percent of time due to having to manage his symptoms", and "would miss two or more days per month when symptoms are more severe." (AR 500), but his opinion was entitled to "no weight" because he only saw Mr. May once (on September 15, 2017) and his opinion was inconsistent with the records from Mr. May's treating specialist, Dr. Fisher, and unsupported by the record.

• As seems true of every claimant, Mr. May's statements about the intensity, persistence and limiting effects of his symptoms weren't "entirely consistent with the medical evidence and other evidence in the record."

The ALJ thus concluded that Mr. May wasn't disabled from September 1, 2010 through the date of his July 2, 2018 decision, and denied his application for benefits, without making alternative findings at steps three, four, or five. The Appeals Council denied Mr. May's request for review, and the ALJ's decision became the Commissioner's final decision. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Mr. May contends that the ALJ erred when he:

3

(1) gave the opinions of two of his treating physicians, Dr. Mulry and Dr. Jason Moshier, little or no weight, gave too much weight to the opinions of the state agency physicians, and incorrectly concluded that the ulcerative colitis had been clinically in remission since it was first diagnosed in 2010.

(2) didn't consider Mr. May's other impairments, specifically anxiety and obsessive compulsive disorder (OCD); and

(3) found that Mr. May's statements regarding his symptoms weren't consistent with the medical record.

It's troubling that the ALJ didn't specifically address more of the factors identified in the regulations when deciding what weight to give opinions of Mr. May's treating physicians and the state agency consulting physicians. The decision explains why he didn't consider the state agency physicians' opinions too stale, but not why he found them persuasive. But there need be only one ground for remand and the ALJ's failure to discuss the combination of Mr. May's impairments is such a ground.

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). The ALJ uses a five-step sequential evaluation to determine whether a claimant falls within that definition and is eligible for benefits: (1) Is

4

the claimant engaged in substantial gainful activity)? (2) Does the claimant have a medically determinable impairment of combination of impairments that is severe and has lasted, or is expected to last, for a continuous period of at least 12 months? (3) Does the impairment meet or exceed any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1 which are deemed "conclusively disabling"? (4) Can the claimant still perform his or her past relevant work? (5) Can the claimant do any other work? 20 C.F.R. §§ 404.1520(a)(4) and 404.1509 (duration requirement).

At step one, the ALJ found that Mr. May wasn't disabled from January to December 2012 because he engaged in substantial gainful activity during that time. *See* 20 CFR 404.1574 and 404.1575.

The ALJ's findings at step two were limited to the times that Mr. May didn't engage in substantial gainful activity – September 1, 2020 to December 31, 2011 and January 1, 2013 to July 2, 2018. The ALJ found that Mr. May's ulcerative colitis was in remission during those periods, didn't cause more than minimal restrictions on his ability to function, and wasn't severe. He therefore concluded that Mr. May wasn't disabled and ended his inquiry there, without making alternative findings.

While the regulations allow him to do so, 20 C.F.R. § 404.1520(a)(4), "[t]he Step 2 determination is 'a *de minimis* screening for groundless claims'", O'Connor-Spinner v. Colvin, 832 F.3d 690, 697 (7th Cir. 2016) (quoting Thomas v. Colvin,

5

826 F.3d 953, 960 (7th Cir. 2016)), and "doubts should be resolved against resting any decision on 'severity' alone." McCullough v. Heckler, 583 F.Supp. 934, 938 (N.D. Ill. 1984). *See also* S.S.R. 85-28; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3rd Cir. 2003); Householder v. Bowen, 861 F.2d 191 (8th Cir. 1988).

An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and has lasted or is expected to last for a continuous period of at least 12 months. It isn't severe if the medical evidence establishes only a "slight abnormality" that has only a "minimal effect" on the claimant's ability to work. *See* SSR 16-3p; Harper v. Sullivan, 1990 WL 186094 (N.D. Ill. Nov. 12, 1990). "[T]he possibility of several [non-severe] impairments combining to produce a severe impairment must be considered." SSR 85-28. "A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe. ... If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." Id. "At the second step of the sequential evaluation, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." Id.

The medical evidence shows that Mr. May's ulcerative colitis was chronic, and that the severity of his symptoms fluctuated. His colitis was active and marked or moderate to severe in August 2010, September 2011, and August and

6

September 2012, and reasonably could have caused pain, diarrhea, and fatigue and had more than a minimal effect on Mr. May's ability to perform basic work-related activities. Dr. Fischer noted that the colitis responded well to a combination therapy of sulfasalazine and Rowasa enemas and was in clinical remission from August 2014 through at least August 2016, as long as Mr. May complied with his treatment plan. A colonoscopy in 2017 was normal.

The ALJ's findings about the severity of Mr. May's impairment were based at least in part on a misreading of a medical report. He noted in his decision that: "An August 2012 visit note [by Dr. Michael Chiorean, a treating specialist] described the claimant in clinical remission since his diagnosis almost three years prior." That's inaccurate. Dr. Michael Chiorean stated in his August 8, 2012 notes that: "Clinically, [Mr. May] has not been in remission essentially since his diagnosis almost 3 years ago. On the other hand, he has only received 5-ASA as maintenance therapy so far, primarily due to his reluctance to use immune-suppressives." Mr. May's treating specialists have consistently recommended immune-suppressive therapy, and Mr. May has repeatedly declined due in part to the potential side effects.

The record contains very little information about the anxiety and OCD diagnoses and treatment. Dr. Mulry diagnosed Mr. May with anxiety in June 2010, prescribed Zoloft, and opined that his gastrointestinal issues "appear[ed] to be due to anxiety." An OCD diagnosis appears for the first time in Dr. Mulry's

7

notes from an office visit in July 2010, which show that he was prescribed Zoloft for OCD and anxiety. The diagnoses are repeated sporadically in progress notes from Dr. Mulry and Dr. Fischer, and Dr. Larsen, the state agency consulting psychologist concluded that Mr. May's OCD and anxiety weren't severe. But Mr. May's impairments needn't be severe standing alone. It would be enough if they combined with his colitis to amount to a severe impairment. The evidence of Mr. May's anxiety – not used in a diagnostic sense – about the availability of restrooms underscores the significance of the issue. Other than saying he was giving great weight to Dr. Larsen's opinions, the ALJ really said nothing about the possible impact of a combination of colitis, pancreatitis, clinical anxiety, and OCD, and Dr. Larsen said nothing about that combination. SSR 85-28 makes it clear that he was required to evaluate all of Mr. May's impairments and determine whether they were severe in combination.

Had the ALJ addressed Mr. May's other impairments in his step two analysis and provided alternative findings at steps three, four, and/or five, the outcome may have been different. But he didn't do so, and the court can't speculate on what those alternative finding might have been.

Accordingly, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED:   June 4, 2020

                                        /s/ Robert L. Miller, Jr.
Judge
United States District Court